In re Agola

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 6th day of June, two thousand twelve.

PRESENT:
> José A. Cabranes,
> Robert D. Sack,
> Richard C. Wesley,
>
> *Circuit Judges.*

---

In re Christina A. Agola,

      Attorney.

10-90061-am

ORDER OF
GRIEVANCE PANEL

---

For Christina A. Agola:

Christina A. Agola, Esq.,
Brighton, New York.

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the recommendations of this Court's Committee on Admissions and Grievances ("the Committee") are adopted, and Christina A. Agola is PUBLICLY REPRIMANDED for the misconduct described in the Committee's report.

## I. Summary of Proceedings

By order filed in July 2010, this Court referred Agola to the Committee for investigation of the matters described in that order and preparation of a report on whether she should be subject to disciplinary or other corrective measures. During the Committee's proceedings, Agola had the opportunity to address the matters discussed in the Court's referral order and to testify under oath at a hearing held in January 2011.[1] Presiding over the hearing were Committee members James I. Glasser, Paul C. Curnin, and the Honorable Howard A. Levine. In December 2011, the Committee filed with the Court the record of the Committee's proceedings and its report and recommendations. Thereafter, the Court provided Agola with a copy of the Committee's report, and Agola responded.

In its report, the Committee concluded that there was clear and convincing evidence that Agola had engaged in misconduct warranting the imposition of discipline. Report at 11. Specifically, the Committee found that Agola had failed to comply with this Court's scheduling orders and deadlines in twenty-one cases, causing the dismissal of seven cases based on her default, and that her conduct in district court had been criticized by three district court judges

---

[1] Agola was represented by counsel in these proceedings until September 2011, at which time she commenced representing herself *pro se.*

and a magistrate judge.[2] *Id.* at 7-9. After considering various aggravating and mitigating factors, *id.* at 9-11, the Committee recommended that Agola be publicly reprimanded and directed to comply with certain reporting and continuing legal education ("CLE") requirements, *id.* at 11-13. In her response to the Committee's report, Agola waived any objection to the report, and submitted a status report as recommended by the Committee.

## II. Disposition

Upon due consideration of the Committee's report, the underlying record, and Agola's submissions, it is hereby ORDERED that Agola is PUBLICLY REPRIMANDED for the misconduct described in the Committee's report, and directed to comply with the reporting and CLE requirements described on pages 12 and 13 of the report.[3] In the event that any of Agola's periodic reports are not timely filed or reveal deficiencies not justified by exigent circumstances,

[2] As noted in this Court's July 2010 referral order, we are not imposing additional discipline on Agola for the district court conduct considered by the Committee. However, Agola's district court conduct, in conjunction with her conduct in this Court, is relevant to whether she is able to meet her future professional obligations to this Court. *See In re Jaffe*, 585 F.3d 118, 121 (2d Cir. 2009)("[E]ven where 'discipline' is not appropriate, the Court may nonetheless determine, based on an attorney's prior behavior, that she will be unable to conform her future conduct to expected professional norms, and, as a result, that her ability to practice in this Court should be barred[, or another sanction or warning imposed,] as a corrective measure in order to protect the public, other attorneys and litigants, the Court, and the administration of justice.").

[3] The commencement date for the first report is modified – the period covered by that report is to begin November 1, 2011, just prior to the filing of the Committee's report in this Court.

or Agola fails to complete the required CLE hours, the Committee may recommend the imposition of additional discipline, including but not limited to suspension from this Court, without hearing further testimony.

In reaching this decision, we rely heavily on the mitigating factors noted by the Committee. Among other things, Agola herself brought potentially negative information to the Committee's attention, provided a detailed response to each issue, successfully demonstrated that little or no prejudice resulted from the default dismissals, and made significant changes in her practice in order to avoid similar issues arising in the future. Additionally, the affidavits and testimony of her clients were helpful in understanding the context of the conduct at issue and in gauging her value to the profession and ability to comply with professional norms in the future.

The text of this panel's July 2010 order and the Committee's report are appended to the present order for purposes of disclosure of the order by Agola and the Clerk of Court. The Clerk of Court is directed to release this order to the public by posting it on this Court's web site and providing copies to members of the public in the same manner as all other unpublished decisions of this Court, and to serve a copy on Agola, this Court's Committee on Admissions and Grievances, the attorney disciplinary committee for the New York State Appellate Division,

4

Fourth Department, and all other courts and jurisdictions to which this Court distributes disciplinary decisions in the ordinary course.[4]

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

By:   Michael Zachary
      Counsel to the Grievance Panel

---

[4] Counsel to this panel is authorized to provide, upon request, documents from the record of this proceeding to other attorney disciplinary authorities.  While we request that all such documents remain confidential to the extent circumstances allow, we leave to the discretion of those disciplinary authorities the decision of whether specific documents, or portions of documents, should be made available to any person or the public.

# APPENDIX 1

## Text of July 2010 Referral Order

For the reasons that follow, Christina A. Agola is referred to this Court's Committee on Admissions and Grievances for investigation of the matters described below and preparation of a report on whether she should be subject to disciplinary or other corrective measures. *See* Second Circuit Local Rule 46.2. We express no opinion here as to an appropriate disposition. The Committee may, of course, in the first instance, determine the appropriate scope of its investigation.

A review of the 40 cases in this Court in which Agola is listed as an attorney of record reveals that, in 21 of her cases, Agola defaulted by failing to file a brief or other required documents by the deadline set in this Court's rules or orders; of those 21 defaulted cases, seven were dismissed as a result of Agola's default. *See* cases docketed under 10-1285-cv (failure to file Forms C and D and notice of appearance form; defaults cured after notification); 10-0756-cv (failure to file Forms C and D, default cured after notification; contacted multiple times about failure to file index to the record); 09-5253-cv (failure to file Forms C and D, default cured after notification; later failure to file scheduling notification letter); 09-4283-cv (failure to file Forms C and D, and later failure to file brief; defaults cured after notification); 09-4170-cv (failure to file Forms C and D, default cured after notification); 09-3484-cv (same); 09-2317-cv (same); 09-1299-cv (dismissed based on failure to file Forms C and D; later reinstated); 09-0818-cv (failure to file Forms C and D, default cured after notification; failure to file brief, appeal withdrawn after notification); 09-0503-cv (failure to file Forms C and D, default cured after notification; appeal later dismissed based on failure to file brief); 09-0235-cv (failure to file Forms C and D, default cured after notification); 09-0026-cv (failure to file brief, default cured after notification); 08-4799-cv (appeal dismissed based on failure to file Forms C and D; dismissed a second time based on failure to file brief); 08-2363-cv (appeal dismissed based on failure to file Forms C and D; motion to reinstate denied); 08-2361-cv (failure to file Forms C and D, default cured after notification); 08-1870-cv (L) (same); 07-4970-cv (L) (same); 05-4049-cv (appeal dismissed based on failure to file brief, after four extensions were granted); 03-7826-cv (appeal dismissed based on failure to file Forms C and D; appeal later reinstated and withdrawn by stipulation of the parties); 03-7911-cv (failure to file brief, appeal withdrawn after notification); 03-6090-cv (appeal dismissed based on failure to file brief).

In addition, Agola's conduct has been criticized by at least two judges sitting in the Western District of New York. In *Sullivan v. New York State Department of Corrections*, Judge Siragusa stated that he was taking the extraordinary step of identifying Agola in the background section of his decision dismissing Agola's complaint and denying her motion to amend the complaint because her "many errors ... necessitate[d] a frame of reference." 2009 WL 3189869, *3, n.11 (W.D.N.Y. 2009). Judge Siragusa found, *inter alia*, that Agola had failed to: (1) "proffer any explanation" for delaying her motion "almost two years after the scheduling deadline had passed"; (2) raise any causes of action over which the court had subject matter jurisdiction; or (3) "supply any facts in support of [her Family Medical Leave Act and 42 U.S.C. § 1981 claims]." *Id*. at *5-7. The court then stated the following in a footnote, citing three other cases where Agola's pleadings had been deficient:

> Ms. Agola, in the preliminary introduction of her proposed amended complaint, references a violation of the Family Medical Leave Act of 1993 (29 U.S.C. § 2601). However, subsequent to the introduction, she does not raise any cause of action under the Act for the Court to address. Additionally, Ms. Agola makes a 42 U.S.C. § 1981 claim but fails to supply any facts in support of that claim. This, in the Court's experience, is typical of Ms. Agola's "copy and paste" document preparation method, on which the Court has previously commented. *See White v. Eastman Kodak Co.*, No. 06-CV-6493-CJS, 2009 U.S. Dist. LEXIS 45335, 2-3, n. 1 (W.D.N.Y. May 29, 2009); *Guarino v. St. John Fisher College*, No. 06-Cv-6251-CJS, 2008 U.S. Dist. LEXIS 25157, 2008 WL 850333 (W.D.N.Y. Mar. 28, 2008), *vacated on reconsideration by Guarino v. St. John Fisher College*, [553] F.Supp.2d 252, n. 2, 233 Ed. Law Rep. 705 (W.D.N.Y. Apr. 16, 2008) ("The obvious objective of Local Rule 56.1 is to facilitate the Court's resolution of summary judgment applications. However, Plaintiff's blatant disregard of the 'short and concise' requirement of Local Rule 56.1 and her submission, instead, of 338 pages in response to Defendant's 12-page statement of facts, has had the opposite effect and subverted the Rule's purpose."); *see also D'Eredita v. ITT Industries*, No. 07-CV-6185-CJS, 2009 U.S. Dist. Lexis 36496, *2, 73 Fed. R. Serv.3d (Callaghan) 557 (W.D.N.Y. Apr. 29, 2009)(confusing complaint clarified by memorandum of law in opposition to summary judgment).

*Id*. at *7, n. 18. In a fifth case, Judge Siragusa sanctioned

Agola's law office $5,000 for pursuing a claim "that was clearly not warranted by the facts of th[e] case, or by existing law or a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." *Geiger v. Town of Greece*, 2008 WL 728471, *5 (W.D.N.Y. Mar. 18, 2008). In a sixth case, Judge Siragusa denied Agola's motion to amend because she had failed to demonstrate good cause for filing the motion eight months after the deadline to amend pleadings had passed. *See Glover v. Jones*, 2006 WL 3207506, *4 (W.D.N.Y. 2006). *See also O'Reilly v. Marina Dodge, Inc.*, 2010 WL 2553458, *9 (W.D.N.Y. June 22, 2010) (Siragusa, J.) (evidence precluded as sanction for failure to disclose earlier); *Schratz v. Potter*, 2008 WL 5340992, *9 (W.D.N.Y. Dec. 19, 2008) (Siragusa, J.) (same).

Judge Larimer has criticized Agola's conduct in at least two cases. In his May 2010 decision dismissing a complaint she had filed, he noted her mysterious reference to Title VII, the Equal Pay Act, and the Fair Labor Standards Act, none of which had any relevance to the case. *See Sullivan v. Chappius*, 2010 WL 1816647, *1 (W.D.N.Y. 2010). Referring to Judge Siragusa's opinion in *Sullivan v. New York State Department of Corrections*, Judge Larimer reasoned that such references were "probably ... attributable to what Judge Siragusa [had] aptly described as 'Ms. Agola's 'copy and paste document preparation method,' which apparently involves lifting and reusing parts of pleadings and other papers from unrelated cases, without bothering to check to make sure that they are accurate and relevant to the case at bar." *Id.*, at *4, n. 4 (citing 2009 WL 3189869, at *7, n.18).

In the second case, Judge Larimer dismissed the plaintiffs' complaint filed by Agola, for failure to sufficiently plead their claims, and denied Agola's motion to amend the complaint, finding that the proposed amendment was frivolous and brought in bad faith. *See Johnson v. University of Rochester Medical Center*, 686 F.Supp.2d 259, 270-71 (W.D.N.Y. 2010) (noting that the publication of an allegedly defamatory document "had been procured and orchestrated entirely by [Agola]," a fact that was "glaringly omitted" from the proposed amended complaint). Agola was later sanctioned $8,399 for that conduct. *See Johnson v. University of Rochester Medical Center*, 715 F.Supp.2d 427, 430-31 (W.D.N.Y. June 3, 2010)("Given the bad faith inherent in counsel's attempt to place facts in a pleading which she knew firsthand to be misleading at best and utterly untrue at worst, and counsel's inexplicable refusal to withdraw the frivolous claims for nearly a year, even after their baselessness had been precisely identified and briefed by defendants, I find that an award of monetary sanctions is appropriate in this case."). *See also Barkley v. Pennyan School Dist.*, 2009 WL 2762272, *1 n.1 (W.D.N.Y. Aug. 25,

2009) (Telesca, J.) (criticizing response to summary judgment motion).

We do not intend to impose additional discipline on Agola for the district court conduct described above. We assume that the sanctions and criticism Agola received for that conduct fully addressed all of the district court's concerns, and that each sanction or criticism constituted the final sanction in each instance. However, that conduct, in conjunction with her conduct in this Court, remains relevant to whether Agola is able to meet her future professional obligations to this Court. "[E]ven where 'discipline' is not appropriate, the Court may nonetheless determine, based on an attorney's prior behavior, that she will be unable to conform her future conduct to expected professional norms, and, as a result, that her ability to practice in this Court should be barred[, or another sanction or warning imposed,] as a corrective measure in order to protect the public, other attorneys and litigants, the Court, and the administration of justice." *In re Jaffe*, 585 F.3d 118, 121 (2d Cir. 2009).

Upon due consideration of the matters described above, it is hereby ORDERED that Christina Agola is referred to this Court's Committee on Admissions and Grievances for investigation and preparation of a report, pursuant to Federal Rule of Appellate Procedure 46, this Court's Local Rule 46.2, and the Rules of the Committee on Admissions and Grievances. The Committee is authorized to share information, and/or hold joint proceedings, with other disciplinary committees, as long as confidentiality is maintained.

[text redacted]

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

[seal]

By:   Michael Zachary
      Counsel to the Grievance Panel

9

Report of the Committee
on Admissions and Grievances

REPORT & RECOMMENDATION
Re: In re Christina A. Agola, # 10-90061-am

## I. Introduction

By Order dated July 8, 2010, the United States Court of Appeals for the Second Circuit ("the Court") referred Christina A. Agola to this Committee for investigation and for preparation of a report and recommendation addressing whether Attorney Agola should be subject to discipline, or other corrective measures, for conduct cited in the Court's Referral Order. See Referral Order.

The Court's Referral Order directed the Committee to consider Attorney Agola's failure to comply with scheduling orders of the Court in 21 of 40 cases in which she appeared as counsel of record, and the resulting dismissal of seven of those cases because of defaults. In addition, the Court identified cases from the Western District of New York where Judges of that court were openly critical of Attorney Agola's methods and practice of law in particularly identified cases. The Referral Order observed that Attorney Agola's conduct in the District Courts, "in conjunction with her conduct in this Court" is "relevant to whether Agola is able to meet her future professional obligations to this Court." See Referral Order at 4 (citing In re Jaffe, 585 F.3d 118, 121 (2d Cir. 2009)).

Pursuant to the Court's Referral Order, a hearing was held before a panel of the Committee on January 27, 2011. Based on testimony adduced at that hearing, the testimony of a character witness, affidavits of character witnesses, documentary evidence, including records of the Court, as well as submissions by Attorney Agola and her counsel, the Committee finds that

1

Attorney Agola's conduct warrants discipline and recommends a public reprimand, that she be required to attend Continuing Legal Education ("CLE") courses over-and-above the CLE hours required for all attorneys admitted in New York State, and that she be subject to reporting requirements as outlined below.

The following constitutes the Committee's report and recommendation in support of the recommended sanction.

## II. The Disciplinary Proceeding

The Committee provided Attorney Agola with notice and a copy of the Second Circuit's Referral Order by letter dated August 9, 2010. Attorney Agola was notified of her right to a hearing, her right to representation by counsel, and was directed to respond to the allegations of the Referral Order within 30 days. Attorneys William Savino and David Wilck of Rivkin Radler LLP, entered appearances on behalf of Attorney Agola and requested a brief extension of time to respond to the allegations. The request for an extension of time was granted and, on October 4, 2010, counsel submitted a Statement in Response to the Notice of Referral ("Response"). The Response was supplemented by submission dated January 17, 2011 ("Supp. Response").

A hearing was originally scheduled for November 29, 2010 but was continued at the request of counsel for Attorney Agola. The adjourned date was set for January 27, 2011, and on that date a hearing was conducted by Committee members Judge Howard A. Levine, Paul C. Curnin, and James I. Glasser. Attorney Agola was represented by Attorneys Savino and Wilck. Attorney Agola testified on her own behalf, presented the testimony of one character witness, and both Attorney Agola and her counsel had an opportunity to address the allegations of the Court's Referral Order.

Following the hearing, Attorney Agola was provided a copy of the transcript and was given an opportunity to submit a post-hearing brief. On March 7, 2011, Attorney Agola submitted a post-hearing brief. That brief included, inter alia, character and professional references from Messrs. Casciani, Green, and Elardo.

The Committee's factual findings are based on the foregoing, as well as submissions made by the Clerk of the Court of the Western District of New York on behalf of District Judges Michael Telesca, David Larimer and Charles J. Siragusa; the Sworn Declaration of Magistrate Judge Jonathan W. Feldman; and a letter submitted by Monroe County Court Supreme Court Judge John DeMarco.

## III. Factual Background

### A. Attorney Christina Agola's Legal Education and Practice of Law

Attorney Agola graduated from the University of Buffalo Law School in 1992 and was admitted to the Bar of the State of New York in 1994. Attorney Agola is admitted to practice in the United States District Courts for the Western District of New York and Northern District of

2

New York, the United States Court of Appeals for the Second Circuit, and the United States Supreme Court.

Attorney Agola started her law practice immediately after her admission to the Bar and, during the early years, a substantial portion of her practice was devoted to pro bono matters. Transcript of Jan. 27, 2011 Hearing ("Tr.") at 20. Her practice has evolved and grown over the years; now her practice is predominantly devoted to the representation of persons alleging civil rights violations and employment discrimination. Attorney Agola testified that her practice grew, particularly between 2008 and 2010, and that "perhaps [her] practice got away from [her]." Tr. at 23. In recognition of the shortcomings of her practice, Attorney Agola has changed the staffing of her office by relieving certain employees of their duties and by hiring additional lawyers and other staff. Response 4-5.

Attorney Agola reported that there have been nine grievances filed against her with the New York State Attorney Grievance Committee and one with the Monroe County Bar Association. Attorney Agola reported that she has never been disciplined or sanctioned in any matter. The Committee's own investigation confirmed that, to date, Attorney Agola has not been disciplined or sanctioned. [1]

## B.    The Referral Order

The Court referred Attorney Agola to the Committee because, as the Court observed, "[a] review of the 40 cases in this Court in which Agola is listed as an attorney of record reveals that, in 21 of her cases, Agola defaulted by failing to file a brief or other required documents by the deadline set in this Court's rules or orders; of those 21 defaulted cases, seven were dismissed as a result of Agola's default." Referral Order at 2. [2] The Court also noted that "Agola's conduct has been criticized by at least two Judges sitting in the Western District of New York." Referral Order at 2. The Court directed the Committee to consider Attorney Agola's conduct in the District Courts because it is "relevant to whether Agola is able to meet her future professional obligations to this Court." See Referral Order at 4.

## C.    Information Obtained from the District Courts

Pursuant to the Referral Order, the Committee received information through the Clerk of Court from three Judges of the United States District Courts for the Western District of New York and a Magistrate Judge from the Northern District of New York. The information received recounts shortcomings of Attorney Agola's practice of law before those courts.

---

[1] The Committee's investigation identified six additional complaints filed against Attorney Agola that were not disclosed by Agola. Five of the additional complaints were filed in 2002 or earlier and were destroyed pursuant to New York State record retention regulations. The sixth complaint, also destroyed pursuant to state regulations, was closed as not stating a complaint. The Committee was able to determine that Attorney Agola was not disciplined or sanctioned in connection with any of these additional six matters. The Committee has determined not to consider that these additional grievances were not disclosed by Attorney Agola because records pertaining to these matters had been destroyed and because they did not result in discipline.

[2] Attorney Agola and her counsel represented to the Committee that at the time of the Referral Order she was actually counsel of record in 52 cases, not 40 cases.

3

More particularly, United States District Court Judge Charles J. Siragusa cited several cases in which Attorney Agola was counsel of record as illustrative of what he viewed as Attorney Agola's deficient performance. For example, in <u>Sullivan v. New York State Dep't of Corrections</u>, Judge Siragusa dismissed a complaint filed by Attorney Agola and denied a motion to amend. The court found that Attorney Agola failed to: "(1) 'proffer any explanation' for delaying her motion 'almost two years after the scheduling deadline had passed'; (2) raise any causes of action over which the court had subject matter jurisdiction; or (3) 'supply any facts in support of [her Family Medical Leave Act and 42 U.S.C. § 1981 claims].'" Similarly, in <u>Emmerling v. Town of Richmond</u>, Judge Siragusa found that Attorney Agola (1) failed to cite the correct standard for a motion to dismiss; (2) failed to provide a short and plain statement under FRCP 8; and (3) implausibly argued that a repeated reference to an incorrect date was a typographical error. In <u>Kleehammer v. Monroe County</u>, Judge Siragusa found that Attorney Agola failed to cite the correct standard for a motion to dismiss and reminded Attorney Agola of the requirements of Rule 11 and questioned her "good faith basis for pleading the retaliation claim." In two other cases, Judge Siragusa precluded evidence as a sanction for Attorney Agola's failure to disclose evidence in a timely manner. Referral Order at 3. Perhaps most disturbing, in <u>Rojas v. Diocese of Rochester</u>, Judge Siragusa found that Attorney Agola submitted "sham evidence" in the hope of defeating summary judgment.

The Committee also received a letter from Judge David Larimer through the Clerk of Court. Judge Larimer described eight cases in which he felt Attorney Agola's practice was deficient. Judge Larimer found that, "Ms. Agola on more than one occasion demonstrated a disregard for her obligations under Rule 11, with respect to both factual allegations and legal claims and theories that she has made before this Court." The court underscored what it termed Attorney Agola's "cavalier attitude" in alleging factual matters. Judge Larimer was also critical of Attorney Agola's "cut and paste" pleadings and motion practice, which resulted in statements in pleadings that were obviously not applicable to the case at issue. Judge Larimer specifically noted that he had brought his various observations about Attorney Agola's deficiencies to her attention in the past but the same deficiencies persisted.

The Clerk of Court also forwarded a decision and order by Judge Michael Telesca in <u>Rice v. Wayne County</u>, 09 Civ. 6391 (July 26, 2010). In that case the court dismissed the complaint without prejudice for failure to adequately allege a cause of action under the Family and Medical Leave Act and the New York Human Rights Law. When Attorney Agola filed an amended complaint it suffered from the same deficiencies as the original complaint. Judge Telesca made note of both "substantive and non-substantive errors" in the complaint. When Attorney Agola filed a motion pursuant to Rule 60(b), the court cautioned that "plaintiff's counsel is advised that in the future, such frivolous arguments may be subject to sanctions." The court stated: "I emphasize that the frivolous and legally unsubstantiated reasons upon which plaintiff's attorney Agola bases her motion for reconsideration exemplifies both a fundamental misunderstanding of the law and gross professional ineptitude in the representation of her client."

Although not part of the referral from the Court, Magistrate Judge Feldman of the Western District of New York was subpoenaed by Attorney Agola and was asked to provide his opinion as to Attorney Agola's fitness and character as an attorney. In response, Magistrate

4

Judge Feldman submitted a sworn declaration in which he stated that Attorney Agola was a frequent advocate in his court, predominantly in federal civil rights and employment discrimination matters. Judge Feldman noted that at the time his declaration was made, Attorney Agola was counsel of record in 141 pending cases in the Western District of New York; he was the assigned Magistrate Judge in 57 of those cases. Judge Feldman stated that he has had many opportunities to observe Attorney Agola and had more than an ample basis to form an opinion as to her character and fitness to practice law. Judge Feldman stated that he is aware of the opinions of his judicial colleagues concerning Attorney Agola's deficiencies in her practice of law in particular cases. Judge Feldman observed that "I agree with their views and all too often have experienced the same deficiencies and carelessness in cases before me in which Ms. Agola is an attorney for a party." Judge Feldman, however, attributed Attorney Agola's deficiencies to the "business model she has chosen for her law practice." He observed that she accepts far too many cases and as a consequence does not give clients the attention that is needed to effectively prosecute their claims. Judge Feldman noted that "by litigating so many cases at once, Ms. Agola subjects herself to complying with scheduling orders in which it is unlikely, if not impossible for her to meet deadlines, do adequate legal research, write organized and coherent briefs, and do the critical thinking which is essential to effective lawyering. Unfortunately, despite ample opportunity, Ms. Agola is unwilling to change the way she decides to take cases."

Judge Feldman was of the view, however, that Attorney Agola has the legal ability and professional ethics to be a valuable member of the legal community. His view was based on specific experiences where Attorney Agola was forced to concentrate on a particular case owing to requirements imposed on her by the court. Judge Feldman also has had the opportunity to observe Attorney Agola on trial. He opined that her trial skills were better than many lawyers and, in his view, she had the ability to improve and be counted among the more highly skilled trial lawyers. Moreover, based on his many opportunities to observe Attorney Agola together with her clients, Judge Feldman thought that her clients respect her and trust her judgment. Judge Feldman attributed many of Attorney Agola's problems to her case intake policies and was of the view that "she will not be an effective lawyer unless and until she reduces her caseload."

The Referral Order made clear that the Second Circuit does "not intend to impose additional sanctions on Agola for the district court conduct," but "that conduct, in conjunction with her conduct in [the Second Circuit], remains relevant to whether Agola is able to meet her future professional obligations to [the Second Circuit]." The Committee has considered the information received from the District Court Judges and Magistrate Judges for that purpose and to assist the Committee's determination of the appropriate discipline and sanction.

## IV. The Committee's Role and Standard of Review

Under the Rules of the Committee on Admissions and Grievances for the United States Court of Appeals for the Second Circuit ("Committee Rules"),

> "An attorney may be subject to discipline or other corrective measures for any act or omission that violates the rules of professional conduct or responsibility of the state or other jurisdiction where the attorney

5

> maintains his or her principal office.... An attorney may also be subject to discipline or other corrective measures for any failure to comply with a Federal Rule of Appellate Procedure, a Local Rule of the Court, an order or other instruction of the Court, or a rule of professional conduct or responsibility of the Court, or any other conduct unbecoming a member of the bar."

Committee Rule 4; see also Fed. R. App. P. 46(c) ("[A] court of appeals may discipline an attorney who practices before it for conduct unbecoming a member of the bar or for failure to comply with any court rule.").

"Conduct unbecoming a member of the bar" includes "conduct contrary to professional standards that shows an unfitness to discharge continuing obligations to clients or the courts, or conduct inimical to the administration of justice. More specific guidance is provided by case law, applicable court rules, and 'the lore of the profession,' as embodied in codes of professional conduct." In re: Snyder, 472 U.S. 634, 645 (1985).

The Committee's "finding that an attorney has engaged in misconduct or is otherwise subject to corrective measures must be supported by clear and convincing evidence." Committee Rule 7(h). If this burden is met, the Committee will then generally consider (a) the duty violated; (b) the lawyer's mental state; (c) the actual or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors, in order to determine the sanction, if any, to recommend to the Court. See American Bar Association's Standards for Imposing Lawyer Sanctions ("ABA Standards") § 3.0. The Committee may recommend to the Court's Grievance Panel a range of sanctions, including disbarment, suspension, public or private reprimand, monetary sanction, removal from pro bono or Criminal Justice Act panels, referral to other disciplinary bodies, supervision by a special master, counseling or treatment, or "such other disciplinary or corrective measures as the circumstances may warrant." Committee Rule 6.

## V.    The Legal Standard for Identifying Misconduct

Courts have consistently treated neglect of client matters and ineffective or incompetent representation as sanctionable conduct. See, e.g., Gadda v. Ashcroft, 377 F.3d 934, 940 (9th Cir. 2004); Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 133 (2d Cir. 2004); Matter of Rabinowitz, 596 N.Y.S.2d 398, 402 (N.Y. App. Div. 1993); United States v. Song, 902 F.2d 609 (7th Cir. 1990); In re of Kraft, 543 N.Y.S.2d 449 (N.Y. App. Div. 1989); In re Bithoney, 486 F.2d 319 (1st Cir. 1973).

Such conduct is also sanctionable under the applicable professional rules and standards. Because Agola's conduct at issue in this matter occurred both prior to and after the New York Rules of Professional Conduct went into effect on April 1, 2009 (the "Rules"), it is governed both by the Rules and the New York Lawyer's Code of Professional Responsibility (the "Code"). There is a continuity of an attorney's responsibilities and ethical obligations under both the old

6

and current frameworks and references are made to both the Rules and the Code.[3] Additionally, the ABA Standards call for a range of sanctions from reprimand to disbarment for various forms of "lack of diligence" and "lack of competence." ABA Standards §§ 4.4, 4.5. While not binding, the ABA Standards provide additional guidance in this matter.

With respect to Attorney Agola's conduct that is subject to this Report and Recommendation, several provisions of the Code and Rules are applicable. The Code and the Rules state that a lawyer shall not "[n]eglect a legal matter entrusted to the lawyer." D.R. 6-101(A)(3); 22 N.Y.C.R.R. § 1200.30(A)(3) (2008); Rules 1.3(b). The Code and the Rules also prohibit conduct that "adversely reflects on the lawyer's fitness as a lawyer." D.R. 1-102(a)(7); 22 N.Y.C.R.R. § 1200.3(A)(7); Rules 8.4(h). Additionally, a lawyer has a duty to represent his or her client "zealously," D.R. 7-101, E.C. 7-1, and should "be punctual in fulfilling all professional commitments," E.C. 7-38. See Rule 1.3(a) ("A lawyer shall act with reasonable diligence and promptness in representing a client."). This Court has also made clear in the context of intentional defaults on scheduling orders, that "an appellant's counsel of record who determines that the appeal will not proceed for any reason is required to inform the Court of the situation and seek to either withdraw the appeal or withdraw as counsel. Counsel of record may not end the representation of a client without taking affirmative action, or end an appeal by allowing its dismissal for lack of prosecution." In re Yan, 390 F. App'x. 18, 21 (2d Cir. 2010).

## VI.    The Committee's Findings

### A.    Failure to Comply with Scheduling Orders

As described in the Referral Order, Attorney Agola defaulted in 21 of 40 cases in the Court of Appeals. In seven of those 21 cases, the default resulted in dismissal. According to Attorney Agola's written submission and testimony at the hearing, five of the seven dismissed cases "were ultimately discontinued by the client." Response at 5-6, Tr. 45-46. Of the two remaining dismissed cases one was reinstated and ultimately decided on the merits. Response at 6; Tr. at 46. In the final case, the Court denied Attorney Agola's motion to reinstate, but Attorney Agola has represented to the Committee that she was able to preserve certain of her client's claims in a companion case. Response at 6; Tr. 45-48.

In 14 of the 21 cases, Attorney Agola failed to comply with schedules and deadlines established by the Court; none of the 14 were dismissed as a consequence of these procedural defaults. Response at 7. In six of these case, Attorney Agola cured all defects and the Second Circuit issued a decision on the merits; in three of the cases, Attorney Agola cured all defects and the appeals remain pending; in five of the cases, Attorney Agola's clients decided not to proceed with their appeals and formal stipulations of dismissal were filed. Response at 7.

Attorney Agola's response stated that she was in fact counsel of record in 52 cases in the Second Circuit at the time the Referral Order issued (the Referral Order identified 40).[4] Attorney

---

[3] References to the applicable provisions of the Code will be to the Disciplinary Rules ("D.R.") and Ethical Considerations ("E.C.").

[4] At the time of the hearing, Agola had been counsel of record in 60 total cases in the Second Circuit.

7

Agola's response and testimony at the hearing outlined her compliance with scheduling orders in the 31 cases not directly addressed in the Referral Order. To her credit, Attorney Agola brought to the Committee's attention two additional cases that were dismissed by the Second Circuit in 1999 and 2002 due to her non-compliance with scheduling orders. Response at 8. Attorney Agola represented that in both those matters, her clients informed her that they did not wish to pursue their appellate remedies. Response at 8.

Attorney Agola offered two explanations for her failures to comply with scheduling orders. First, she stated that her failures to comply with scheduling orders "were unintentional and were the result of flaws in her law office management which have since been corrected." Response at 6. Attorney Agola testified that she now "gets it" and has taken steps "to avoid lapses in her practice management." Tr. at 60; Response at 6. She also testified that she was not aware that the late filing of Forms C and D could result in discipline, and if she had been aware of the possible consequence she "would have never let it happen." Tr. at 19.

Second, Attorney Agola was apparently not aware of her obligation to move to dismiss an appeal and withdraw from a case when a client made a decision not to pursue appellate rights. Attorney Agola testified that, going forward, when a client chose not to pursue an appeal, she would move to dismiss the case. Tr. 51-52.

In her submission to the Committee, together with supporting documents, Attorney Agola represented that the seven cases that were dismissed owing to her procedural defaults did not result in prejudice to any of her clients. Response 5-9. Under oath, Attorney Agola also credibly testified to the same effect.

Attorney Agola represented to the Committee that she has implemented a new calendaring system and has hired and trained staff to ensure compliance with Court rules and deadlines. Attorney Agola asked the Committee to consider that she has been in compliance with all deadlines and filing requirements of the Court since the date of the Referral Order. Tr. 54

During the hearing the Committee was concerned that Attorney Agola was placing blame for her failure to comply with scheduling orders on her office staff. See, e.g., Tr. 20-22. But, ultimately, the Committee was satisfied that Attorney Agola recognizes that responsibility for compliance with Court Orders in cases where she is the counsel of record is ultimately hers, and hers alone. See, e.g., Tr. 54.

### B. Conduct in the District Courts

Attorney Agola acknowledged the criticism of the District Court Judges, although she did not always agree with the criticism. She referred to the criticism as "pointed and harsh" and as not fairly characterizing her and her practice. Tr. 29-30. At another point in the hearing Attorney Agola expressed anger and frustration at the criticism leveled against her by the judges before whom she regularly practices and referred to the criticism as "not...constructive." Tr. 36. The Committee was troubled by Attorney Agola's reaction, response and refutation of the serial

8

criticism from the courts before which she regularly practices. However, Attorney Agola ultimately professed to accept the criticism and viewed it, together with the Court's Referral Order, as a "wake-up" call.

With respect to specific criticisms, Attorney Agola took issue with certain of Judge Siragusa's observations. Supp. Resp. at 8-10. She acknowledged, however, that certain briefs were not properly cite checked and that "she must take greater care to ensure that her briefs are properly cite-checked to ensure that her citations represent the current state of the law." Supp. Resp. at 9. She also accepted the criticism that "her drafting of pleadings could be improved," and testified that she has since taken a series of five writing courses, and made significant changes to her staff and her practices to improve her submissions to the courts in which she practices. Tr. 35.

Second, in response to Judge Larimer's criticism that certain allegations were "based on nothing but rank speculation," Attorney Agola disagreed, and stated that she had "a genuine belief that the allegations were sufficiently supported by evidence." Supp. Response at 5. She also stated that "it is not her practice to advance claims which are frivolous or sanctionable." In response to Judge Larimer's criticisms regarding draftsmanship of papers, Attorney Agola said that when she has identified errors in her papers, she has brought them to the court's attention. Supp. Resp. at 7. She has also taken a number of steps to improve her practice management and recognizes that greater time, care and effort must be spent on editing documents. Supp. Response at 7. As mentioned she has already completed Continuing Legal Education Courses to improve her writing skills. Supp. Resp. at 7.

Third, Attorney Agola responded to Judge Telesca's decision and order by stating that she believed that her Rule 60(b) motion was necessary in order to ensure that her client's claims related back to the original complaint. Supp. Response at 4.

### C. Mitigating and Aggravating Factors

#### 1. Mitigating Factors

There are several mitigating factors. First, Attorney Agola was cooperative with the Committee's proceedings and brought conduct to the Committee's attention that was not described in the Court's Referral Order. See ABA Standards § 9.32(e). Attorney Agola informed the Committee that her failures to comply with scheduling orders resulted in dismissals beyond those identified in the Referral Order. Response at 7-9.

Second, several individuals submitted character references on her behalf. See ABA Standards § 9.32(g). For example, a reference letter from the Managing Attorney/CEO of the Erie County Bar Association Volunteer Lawyer's Project, Inc., described that from 1995 through 1999 Attorney Agola volunteered on a pro bono basis for the Project, during which time she handled 459 cases and volunteered over nearly 2000 hours. See Supp. Resp., Exh. B. In addition, one of Attorney Agola's former clients, a doctor, traveled from upstate New York to New York City in the middle of a severe blizzard to testify before the Committee for Attorney

9

Agola and to describe how Attorney Agola doggedly and successfully represented him in an employment-related matter. Also, Judge John L. DeMarco (Monroe County Court) submitted a positive reference letter on Attorney Agola's behalf.

As noted, Magistrate Judge Jonathan W. Feldman (W.D.N.Y.) also submitted a declaration as to Attorney Agola's practice at Attorney Agola's request. While acknowledging that he agreed with the criticisms of the District Court Judges from the Western District of New York who submitted information to the Committee, Judge Feldman also stated that "Agola has the legal ability and professional ethics to be a valuable member of our legal community."

Third, Attorney Agola took steps to improve her practice and her practice management prior to the Committee's hearing. See ABA Standards § 9.32(d). She told the Committee that since the Court's Referral Order, she has paid more attention to proof reading as an important part of the advocacy process. Tr. 28. She has also taken a number of CLE courses on brief writing. Tr. 35. Also, after the hearing in this matter, Attorney Agola consulted with members of Rivkin Radler's appellate practice group concerning methods to improve her appellate practice. Among other things, she has formulated a new calendaring system to keep track of all filings and case dates. Attorney Agola has also hired a new assistant and two new attorneys to improve her practice. Tr. 20.

Fourth, her record of complying with scheduling orders has improved. Supp. Response at 2. See ABA Standards § 9.32(e). Since the Referral Order, Attorney Agola has a strong record of complying with scheduling orders. Tr. at 19-20.

Finally, Attorney Agola expressed remorse. Tr. 86. She also stated that she was ultimately responsible for the actions of her staff. Tr. 54.

### 2. Aggravating Factors

There are two aggravating factors – a pattern of misconduct and multiple offenses. See ABA Standards § 9.22(c), (d). As described in the Referral Order, Attorney Agola failed to comply with scheduling orders in more than one-third of her matters in the Second Circuit.

Attorney Agola's multiple failures to comply with scheduling orders in the Second Circuit is consistent with her multiple and repeated deficiencies in the District Courts. The judges in the Western District of New York, as described above, criticized Attorney Agola's conduct on numerous instances. For example, one District Court Judge found that Attorney Agola's submitted "sham evidence" in one case in the hope of defeating summary judgment, and another District Court Judge remarked of her "cavalier attitude" in alleging factual matters. In addition, Judge Feldman, whose character reference was solicited by Attorney Agola, agreed with the views of the District Court Judges and stated that he "has all too often experienced the same deficiencies and carelessness in cases before me." Judge Feldman attributed Attorney Agola's deficiencies to taking too many cases and not being able to properly pay attention to each of them.

10

It did not appear that the pointed and public criticisms by the District Court Judges had a salutary impact on Attorney Agola, which troubles this Committee. Indeed, the Committee was struck by Attorney Agola's at times overly-defensive and unapologetic posture during the hearing. Attorney Agola's difficulty in expressing genuine remorse coupled with her difficulty in accepting responsibility for her misconduct was evidenced by the cavalier or evasive manner in which she responded to many of the questions the Committee put to her during the hearing. This Committee is hopeful that its disciplinary recommendation will serve not only as a sanction but also as an incentive or "wake-up call," as she herself expressed, for Attorney Agola to transform her overall attitude toward her professional responsibilities.

## VII. Recommendation

Based on the foregoing and after consideration of both aggravating and mitigating factors, the Committee concludes that Attorney Agola's conduct warrants discipline. There is clear and convincing evidence that Attorney Agola failed in numerous cases to comply with the Court's scheduling orders. Of the 40 cases identified in the Referral Order in which Attorney Agola was listed as attorney of record, she failed to comply with scheduling orders in over half. Seven of those cases were dismissed. While Attorney Agola has credibly demonstrated that none of her clients were meaningfully prejudiced, her failure to comply with the Court's scheduling orders and court procedure was chronic and longstanding. See In re Yan Wang, No. 08-9039-am, 2010 WL 2812824, at *3-4 (2d Cir. July 19, 2010) ("[A]n appellant's counsel of record who determines that the appeal will not proceed for any reason is required to inform the Court of the situation and seek either to withdraw the appeal or withdraw as counsel. Counsel of record may not end the representation of a client without taking affirmative action, or end an appeal by allowing its dismissal for lack of prosecution.").

In addition, the Committee places great weight on the observations of the federal judges that were brought to the Committee's attention for the purpose of considering whether Attorney Agola will be able to meet her future obligations to the Court. Attorney Agola testified that the Court's Referral Order served as a "wake-up" call and that she now "gets it." But, the public criticisms of the District Court Judges should have served as an earlier warning to Attorney Agola to make changes to her business model and fully respect her professional obligations to her clients and the courts.

In considering the recommended discipline for Attorney Agola, the Committee is influenced by two factors that result in a recommendation short of suspension.

First, the Committee believes that Attorney Agola is capable of improving her practice. When Attorney Agola is forced to focus her time and attention on individual clients, it appears that she is capable of effectively and zealously representing that client. That point was well-illustrated by the character witness who testified at the hearing and by Judge Feldman's observation that: "Agola has the legal ability and professional ethics to be a valuable member of our legal community."

11

Second, since her receipt of the Referral Order, Attorney Agola has taken numerous steps to address the shortcomings of her practice. She has taken CLE courses in order to improve her writing. She has also implemented the practice of having other lawyers in her office proof read and critique the others' work. Attorney Agola has also made changes to her staff and hired people who she described as more competent and skilled. Also, after the hearing in this matter, Attorney Agola consulted with members of Rivkin Radler's appellate practice group to improve her appellate practice. In her post-hearing submission, Attorney Agola stated that she believed that the "opportunity to consult with other members of the Second Circuit bar was informative," and that Rivkin Radler's appellate lawyers "have made themselves available to Ms. Agola going forward for consultations on issues of Second Circuit appellate practice and procedure." Attorney Agola also said that she would "schedule quarterly meetings" with these attorneys for the period of one year in order to discuss her progress.[5]

It is also worth noting that Attorney Agola has spent countless hours representing clients in pro bono matters and serves a need in her community in representing individuals in civil rights matters and in employment discrimination matters.

Under all of the circumstances, the Committee recommends that Attorney Agola be publicly reprimanded.

In addition, Attorney Agola should be required, in connection with her practice in any federal court in the Second Circuit or in any federal administrative agency whose action is subject to the Second Circuit's review, to submit to the Committee sworn statements identifying under oath each and every instance during each of the six reporting periods described below in which (1) a submission is not filed or is filed out of time; or (2) an application is made for permission to make a late filing only after the due date has passed. During these reporting periods, Attorney Agola must also submit to the Committee sworn statements noting (3) any criticism of her law practice, her briefing, or her representation of her clients in any written order or oral pronouncement of any court or any other tribunal.

The following reporting periods and deadlines shall be observed: The first reporting period shall commence ten days after the Committee's recommendation is mailed to Attorney Agola and shall end six months after the Second Circuit issues its order of disposition in this matter. Each of the five subsequent reporting period shall be for a period of six months. A total of six statements will be prepared by Attorney Agola and mailed to the Committee Secretary. The statement for each reporting period shall be mailed to the Committee Secretary within ten days of the end of each reporting period.

The Committee further recommends that within twelve months of the date of any order of the Court, Attorney Agola be required to complete no fewer than four hours of continuing legal education ("CLE") in appellate advocacy, including appellate writing, and no fewer than four hours of CLE in law office/practice management or legal writing from CLE providers accredited

---

[5] On July 20, 2011, Rivkin Radler moved to withdraw as counsel for Agola owing to a fee dispute, which motion was granted by the Court on September 13, 2011. The Committee assumes the promised consultations and quarterly meetings with the Rivkin Radler lawyers will not occur.

by the Bar of the State of New York, over-and-above the CLE hours required for all attorneys admitted in New York State. The Committee recommends that Attorney Agola be required to complete these CLE credit hours through in-person attendance at seminars. Attorney Agola should provide a sworn statement, accompanied by supporting documentation, attesting to her compliance to this Committee's Secretary no later than thirty days after the expiration of the twelve month period in which she must complete these CLE credit hours.

Given the serious shortcomings noted in the Referral Order and disclosed during the course of the Committee's investigation, Attorney Agola's conduct will be monitored closely by the Committee In the event any of the required sworn statements to be filed by Attorney Agola are not timely, accurate or disclose deficiencies or public criticisms not justified by exigent circumstance, the Committee may recommend the imposition of additional discipline, including but not limited to suspension from the Second Circuit, without hearing further testimony.

Respectfully Submitted,

Howard A. Levine

Member of the Committee

~~October 11,~~ 2011
November 28