**12-4773-cv**
*Muhammad v. Walmart Stores East, L.P.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

————

August Term, 2013

(Submitted: August 19, 2013     Decided: October 9, 2013)

Docket No. 12-4773-cv

————

ABIDAN MUHAMMAD,

*Plaintiff-Appellant,*

-v.-

WALMART STORES EAST, L.P.[*]

*Defendant-Appellee.*

————

Before:

LEVAL, WESLEY, AND HALL, *Circuit Judges*

————

Plaintiff-Appellant Abidan Muhammad asserts various employment discrimination claims against his employer, Walmart Stores, East L.P.  At

---

[*] The Clerk of the Court is directed to amend the caption to conform with the listing of the parties above.

summary judgment, Plaintiff's attorney, Christina Agola, asserted that her client had pled a gender discrimination claim that he had not. Judge Siragusa of the United States District Court for the Western District of New York imposed Rule 11 Sanctions on Agola. Agola appeals. We REVERSE and VACATE the decision and order imposing sanctions.

---

CHRISTINA S. AGOLA, Christina A. Agola, PLLC, Rochester, NY, *for Appellant*.

MICHAEL S. HANAN, Gordon & Rees LLP, Florham Park, NJ *for Appellee*.

---

PER CURIAM:

Christina Agola is an attorney practicing primarily employment law in the Western District of New York. She has a long disciplinary history in the courts of this Circuit. *See, e.g., In re Agola*, 484 F. App'x 594 (2d Cir. 2012) (summary order) (failing to comply with scheduling orders); *Rankin v. City of Niagara Falls*, No. 09-cv-974-A, 2013 WL 1501682 (W.D.N.Y. Apr. 11, 2013) (misrepresenting facts to the court); *Johnson v. The Univ. of Rochester Med. Ctr.*, 715 F. Supp. 2d 427 (W.D.N.Y. 2010) (same); *Geiger v. Town of Greece*, No. 07-cv-6066(CJS), 2008 WL 728471 (W.D.N.Y. Mar. 18, 2008) (pursuing a frivolous claim); *Colombo v. E. Irondequoit*

2

*Cent. Sch.*, No. 07-cv-6270(CJS), 2010 WL 6004378, at \*10 n.8 (W.D.N.Y. Dec. 17, 2010) (collecting more cases).[1] Acting *pro se*, plaintiff Abidan Muhammad initiated the present employment discrimination action in the United States District Court for the Western District of New York. Shortly thereafter, Agola began representing Muhammad. At summary judgment, Agola represented to the court that Muhammad had clearly pled a gender discrimination claim which he had not. *Sua sponte*, the court ordered Agola to show cause why she should not be sanctioned under Federal Rule of Civil Procedure 11. Agola insisted that the liberal pleading standard afforded *pro se* complaints meant that Muhammad's complaint should be read to include a gender discrimination claim. The court rejected this argument as frivolous, reprimanded Agola, and imposed a $7,500 sanction. Agola appeals the imposition of sanctions. Because the district court misapplied the relevant legal standard, we vacate the sanction order and reverse.

---

[1]Agola was temporarily suspended by the Supreme Court Appellate Division for the Fourth Department on September 10, 2013 during an investigation into disciplinary matters involving Ms. Agola currently pending before that court. On September 16, this Court followed with a reciprocal order of suspension pending the outcome of matters at the Appellate Division.

## Background

In February 2008, Walmart hired Abidan Muhammad as an overnight deli stocker at its Chili Avenue store in Rochester, New York. Five months later, Muhammad requested and obtained a leave of absence for a hand injury. As requested, Muhammad was granted leave until September 10, 2008. When Muhammad returned to work on that day, consistent with his doctor's orders, Walmart reassigned him to the light-duty position of Greeter during his normal, overnight shift.

Three weeks later while working Muhammad heard a rumor that he had been fired. Shortly thereafter, Muhammad saw a group of managers and approached them to inquire further. They denied any knowledge of the rumors. Muhammad then returned to his work, but almost immediately approached the managers again. Unprovoked, Mohammad yelled at them, threw his employee identification on the ground, and left. The incident was captured on video tape. Following an internal investigation, Muhammad was fired.

On the same night, a female Walmart associate was involved in another disturbance. The associate's boyfriend argued with her outside and then threw her through the Walmart entrance. The boyfriend was bleeding and had a welt on

4

his forehead. Each screamed profanities at the other and called the police.

Walmart determined that the employee was the victim of domestic violence and did not fire her.

On October 27, 2008, following his own termination, Muhammad, acting *pro se*, filed a complaint with the New York State Division of Human Rights (DHR), and cross-filed with the Equal Employment Opportunity Commission (EEOC), alleging that Walmart terminated his employment because of his race and disability. Muhammad left the "sex" discrimination portion of the complaint form blank. In the portion of the form asking for information about similarly situated persons, however, Muhammad described the domestic violence incident from the night he was fired and wrote, "manual of Walmart [says] fighting [is] automatic termination[;] not her[,] I was fired." DHR found the complaint without merit and, on April 24, 2009, summarily dismissed it.

On November 10, 2009, the EEOC issued Muhammad a right-to-sue letter, and on February 10, 2010, Muhammad filed the instant suit. On the district court's *pro se* discrimination complaint form, Muhammad checked the box for Title VII and ADA discrimination, indicating that he intended to sue pursuant to "Title VII of the Civil Rights Act of 1964 . . . (race, color, gender, religion, national

5

origin)" and the "Americans with Disabilities Act of 1990." He also checked the corresponding boxes for the following:

> a. Failure to provide me with reasonable accommodations to the application process.
>
> . . .
>
> c. Termination of my employment.
>
> . . .
>
> e. Failure to provide me with reasonable accommodations so I can perform the essential functions of my job.
>
> . . .
>
> h. Retaliation because I complained about discrimination or harassment directed toward me.

In response to the prompt "Defendant's conduct is discriminatory with respect to the which of the following (check all that apply):" Muhammad did not check the boxes for "a. Race b. Color. c. Sex." Instead, he checked only the box for "h. disability." In the narrative portion of the form, Muhammad discussed only Walmart's actions related to his alleged disability. He made no mention of race or gender discrimination.

One month later, Christina Agola filed notice of her appearance in the case. Although given five months in which to do so, Agola never amended the complaint to include gender discrimination. Nonetheless, during Muhammad's January 2011, deposition, Agola's client announced his belief that, race, gender, and disability all played a part in his firing.

6

In March 2011, Walmart filed its motion for summary judgment. Walmart's statement of undisputed facts recognized Muhammad's wide ranging theory of discrimination, disclosed in his deposition. However, in responding to Mohammad's actual pleadings, Walmart's memorandum supporting its motion for summary judgment addressed only race and disability discrimination.

Agola filed Muhammad's opposition to summary judgment in June 2011. She claimed that Muhammad "clearly" pled gender discrimination and suggested that unless the complaint "limited the ground(s) upon which Plaintiff seeks relief" a plaintiff may seek relief for any wrong he believes the defendant has done him. According to Agola, Walmart should have anticipated a gender discrimination claim from Muhammad's deposition responses.

The district court was understandably displeased by Agola's last-minute introduction of an unpled gender-discrimination claim. After disposing of the suit's merits, the district court,[2] *sua sponte*, ordered Agola to show cause why she should not be sanctioned for raising an unpled gender discrimination claim at summary judgment and for characterizing it as clearly pled. Agola filed a lengthy response to the order to show cause, but did not attend the hearing; rather, she

---

[2]By summary order issued today we affirm that decision.

7

sent an associate to argue the motion on her behalf. The court rejected her arguments and imposed a reprimand and a $7,500 sanction. Agola appeals the sanction order to this court.

On appeal, Agola argues that her client raised the gender discrimination claim on multiple occasions, including (i) in his complaint to the DHR, (ii) by checking the box for Title VII "race, color, gender, religion, [and] national origin" discrimination on his *pro se* complaint form, and (iii) in his deposition responses. Agola contends that her client thus put the defendant on notice of his gender discrimination claim and that, under the liberal pleading standard afforded *pro se* EEOC complaints, this is enough.

**Discussion**

We review orders imposing Rule 11 sanctions for abuse of discretion. *Kiobel v. Millson*, 592 F.3d 78, 81 (2d Cir. 2010). "This deferential standard is applicable to the review of Rule 11 sanctions because . . . the district court is familiar with the issues and litigants and is thus better situated than the court of appeals to marshal the pertinent facts and apply a fact-dependent legal standard." *Storey v. Cello Holdings*, 347 F.3d 370, 387 (2d Cir. 2003) (internal citations and quotations omitted). Nonetheless, when, as here, the court issues sanctions *sua sponte*

8

without offering the offender the opportunity to withdraw the offending submission, our "review is more exacting than under the ordinary abuse-of-discretion standard," *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009), because in such cases the court simultaneously acts "as accuser, fact finder, and sentencing judge." *Mackler Prods., Inc. v. Cohen*, 146 F.3d 126, 128 (2d Cir. 1998).

Under Rule 11, a court may sanction an attorney for, among other things, misrepresenting facts or making frivolous legal arguments. *Storey*, 347 F.3d at 388. Rule 11 contemplates that "ordinarily" opposing counsel will initiate sanctions proceedings. Advisory Committee notes to the 1993 amendments. In those situations opposing counsel must serve a notice of the sanctions claim on the accused attorney 21 days before moving for sanctions to give an opportunity to correct the asserted misconduct. Fed. R. Civ. P. 11(c)(2). Rule 11 also gives the court the power to initiate sanctions proceedings *sua sponte*. Fed. R. Civ. P. 11(c)(3). In these rarer cases, however, the 21-day safe harbor does not apply and the court may impose sanctions without providing opportunity to withdraw the misstatement.

For sanctions issued pursuant to a motion by opposing counsel, courts have long held that an attorney could be sanctioned for conduct that was objectively unreasonable. In *In re Pennie & Edmonds LLP*, we considered, for the first time, the appropriate standard for *sua sponte* sanctions. 323 F.3d 86, 90 (2d Cir. 2003). In *Pennie*, we determined that the power of the court under Rule 11 to issue sanctions *sua sponte* without affording the offender the opportunity to withdraw the challenged document in the manner provided in the "safe harbor" provision of Rule 11(c)(1)(A), is akin to the court's inherent power of contempt. We reasoned that, like contempt, *sua sponte* sanctions in those circumstances should issue only upon a finding of subjective bad faith. *Id.* at 91.[3] The only question for this court is whether the record before the district court could sustain a finding that Agola was in bad faith in asserting that Muhammad's pro se complaint included a claim of gender discrimination. Applying the heightened review standard accorded to the imposition of sanctions in such circumstances, we find that it could not. *ATSI*, 579 F.3d at 150.

---

[3] In *Pennie* we addressed only the "narrow issue" of an attorney permitting a client to submit a false affidavit. *Pennie*, 323 F.3d at 87. The nature of attorney misconduct does not change the contempt-like nature of *sua sponte* sanctions. Moreover, the district courts of this Circuit have already applied *Pennie* beyond the affidavit context. *Centauri Shipping Ltd. v. W. Bulk Carriers KS*, 528 F. Supp.2d 197, 200 n.3 (S.D.N.Y. 2007) (collecting cases).

Our review of the record indicates that the district court did not apply the correct legal standard. *Int'l Bhd. of Boilermakers v. Local Lodge D129*, 910 F.2d 1056, 1059 (2d Cir. 1990). Here, the district court said it was applying the *Pennie* bad faith standard; its analysis, however, indicates that it was applying an objective reasonableness test. The court couched its conclusion in terms of what "any competent attorney" would have done and extensively discussed Agola's admittedly incompetent practice in other areas. This is not enough to demonstrate subjective bad faith.

## Conclusion

For the foregoing reasons, the Decision and Order of the district court, filed November 28, 2012, is **REVERSED** and **VACATED** .

11